My name is Barry Richard and I am counsel for the appellant, James Irvin. With the Court's permission, of the four points on appeal raised in our brief, I would like to focus on two of them. Count or point one, which was the issue relating to the refusal of the trial court to submit to the jury the issue of scope and of employment and authority, and point three, which was the issue relating to the size of punitive damages. In this case, a key defense raised by Mr. Irvin was that he was acting within the scope of his employment and on authority with regard to the conduct that is the issue that was tried below. That is a defense that is recognized and grounded in Arizona statute and case law. There was clear evidence in the record to support that defense that was substantial and relevant. Mr. Irvin was consequently entitled to have that evidence submitted to the jury. Nevertheless, the lower court declined to do so, both by denying Mr. Irvin a requested instruction on the issue and by refusing to submit to the jury a special verdict form in which the jury was asked to respond to that issue. The issue is grounded in statute 12-821.01 of the Arizona statutes, which requires a ñ that is one of the grounds for it. That statute requires that a party file a notice of claim against a state agency or a state employee within 180 days after the accrual of the cause of action. In this case, it is undisputed that no notice was ever submitted to Mr. Irvin. The Southern Union argues that Mr. Irvin was sued individually and that consequently it had no obligation to submit to him a notice. The Arizona Superior Court in Crum v. Superior Court in 1996 clearly addressed this issue. In that case, the court held that notice is indeed unnecessary when a state employee is sued individually rather than in his or her capacity as a state employee. However, the court went on to say that if a plaintiff chooses not to serve notice, it does so at its own risk and that it becomes a jury question at trial as to whether or not the individual, in fact, was acting within the scope of authority or employment, and if the jury ultimately decides that the individual was, then no judgment can be entered against him. It is the position of Southern Union that has the right, by the way that it articulates its case, to deprive the defendant of the right that the State of Arizona has given that defendant through the notice of claim statute, that simply by choosing not to sue the state agency, only the individual, and choosing to characterize in its pleadings and at trial the conduct of the individual as being individual, it has the right to eliminate what the State of Arizona has granted to that individual. That cannot be the law, number one, because it makes no sense. If that was the intent of the Arizona legislature, there would have been no reason for it to have expressly included the right of the individual as well as the agency to receive the notice. But more importantly, the State of Arizona through the Crum case has spoken. That case was decided nine years ago. In the nine years since that case was handed down, it has not been receded from, it has not been reversed, the legislature has not amended the statute, and the Supreme Court of Arizona has passed no rule that changes the requirement for the notice. That being the case, Mr. Irvin absolutely had the right to submit to the jury the issue of whether or not he was acting within the scope of his employment and his authority, yet the lower court refused to allow him to do so. Even beyond the issue of the notice of claim statute, which itself would be dispositive in this case, is the fact that the issue, even if there had been no statute, was one upon which Mr. Irvin was entitled to go to the jury. Indeed, the jury had the right to conclude that Mr. Irvin had acted beyond the scope of his employment and would have to have so included in order to determine that he acted tortiously and therefore unlawfully interfered with the transaction at issue. But the jury must have some criteria, some benchmark upon which to determine, upon whether or not to determine that he acted beyond the scope of his employment, and the court refused to give it to him. On that basis, Your Honor, we would urge this court that the lower court committed reversible error by failing to submit to the jury or allowing Mr. Irvin to submit to the jury, either through the requested instruction or the requested special verdict form, that issue. You jumped right into the substance of arguments. Are you going to tell us why we have any jurisdiction? I believe the Court has no jurisdiction here rests upon the suggestion that my client failed to properly raise this issue because it was not raised. I think there's an onus referring to the question of whether the appeal is timely. Yes, Your Honor. We believe that the appeal was timely. No, you didn't, but why do you believe that? Well, we've gone into some considerable detail in our brief. The issue was when the lower court entered the judgment below, and the law is now quite clear that the judgment is not entered until it is signed and it is submitted by the clerk. And in this case, what happened in this case, the case law that counsel cites is really an apposite to the law in this case. The fact that the court entered an order in the lower court in which it denied requested relief is not a judgment under federal law. And the reason that the law has been changed was in order to create a bright line determination for appeal so that we would no longer have the questionable issue of when an appeal notice must be filed that plagued us for years and years. Counsel, I think we understand reasons and purposes. The difficulty is the plain reading of the statute of the rule. So rule four says that in a civil case, you can file within 30 days after the judgment order repealed from is entered, except as provided in rule four A, rule four A, four A. And that rule says, so except in this case, if a party has timely filed any of the pre-post, usually called post-judgment motions, then the time runs from the entry of the order disposing of the last of such remaining motions. I believe your opponent's argument is that you don't have to enter the judgment. If you've gone and filed your post-judgment motion before there even is a judgment, which you did, then we count from the time the post-judgment motion was decided. That's what the rule plainly says on its face. How do you answer that? If I may have the permission of the court, although I do not like ordinarily to split arguments, this argument in the brief was written by my colleague, Mr. Scherker. And would the court have any objection to my allowing Mr. Scherker to address it? His knowledge of the circumstances is more detailed than mine. Mr. Scherker? He has the papers handy. If it pleases the Court, Elliot Scherker, the argument, the provision in rule four, your Honor, was added to allow it to be clear that when a timely post-trial motion is filed, an appeal need not be taken until the post-trial motion is disposed of. There's nothing in the advisory committee notes that reflects that for the first time ever under the Federal rules, an appeal must be filed before a final judgment is entered. Hey, suppose I'm not an advisory committee notes person. I'm just a plain reading of the rule person. If you plainly read the rule on its face, it doesn't say what you just said, does it? But Bankers Trust, the United States Supreme Court's decision of Bankers Trust, which is cited in our brief at page two, says that since the separate document rule was adopted in rule 58, and if I might quote, it has been, quote, clear that a party need not file a notice of appeal until a separate judgment has been filed and entered. And I appreciate that the advisory committee notes, your Honor, are not the law and that the rule is the law, but one would suspect that if such a radical change had been intended by the adoption of a provision that merely extends out the time for a notice of appeal, the advisory committee might have mentioned that Bankers Trust was now a dead letter. Well, Bankers Trust was, let's see, 1978, something like that? Correct, Your Honor. And I believe this rule was amended later. 2002. Now, I'm saying again, you will agree that on its face that's what it says, true? It says what the law has always been in one form or another in just about every federal and state jurisdiction of the century. When a final judgment is entered and a party timely seeks. I'm sorry, are you reading the same rule I'm reading? Yes, sir, I am. The rule says that you need a final, that you count from the final judgment, except as provided down here, which simply says once you've issued the final order on the motion, the time starts running. That's what it says on its face. That's what I was attempting to address myself to. And if I might, the point that the rule has to be read as a matter of common sense, as do all rules and all statutes. If a final judgment is entered and a party seeks, rehearing or a new trial or some sort of post-trial relief, the notice of appeal need not be filed within 30 days of the final judgment. And I think we all understand that that's how we usually think about it. And that's how I would normally, in terms of common sense, think about it. I'm talking about what the rule says, however. I understand. It does not say that, does it? It doesn't say it and it doesn't not say it. It does not say it. It says specifically that except as provided, you count from the day of the judgment. And one of the exceptions is this down here, which says you don't count from the day of the judgment. And it doesn't say after a judgment has been filed. You know, we understand in this case there was actually no judgment filed. Correct. Whatsoever until after these things were ruled on. Correct. Indeed, the district court had under, sort of under advisement, forms a judgment. She had earlier suggested she was going to make it a 20 percent thing. She wound up making it 40 percent, I guess. You know, she was going to average and she changed 30 percent. She was going to make it 30. She was going to average the two and said she made it the full 40. And that comes after these things are ruled on. We understand all that. The question is jurisdiction is jurisdiction. And what it says on its face isn't what you're telling me you think good sense. Are you saying it would be absurd to read it on its face that way? Is that your position? I'm saying it would be, it would make bankers' trust dead letter. And it would go contrary to the language of the advisory committee notes. And if I might, we cite them on page two. And what the advisory committee notes to the new Rule 58 say, these are 2002 advisory notes. The exemption of the order disposing of the motion does not excuse the obligation to set forth the judgment itself on a separate document. No court has ever held, and we researched this as thoroughly as we could, that there is ever a requirement to file a notice of appeal before there is a final judgment on which execution may be had. All of the rules are geared to the entry of a final judgment. I'm sorry, Your Honor? Has any court ever held since this rule was adopted that you may file a final, you know, after the date on which, that runs from the entry of the order denying the post-trial motion? Let me answer that question very carefully, Your Honor, because it's an important question that carries a lot of freight with it. No court has addressed the situation that is before this Court now in which the order disposing of the post-trial motions is entered before the judgment. And no court has held ever that a notice of appeal must be filed before there is an entry of a final judgment. What I was speaking to, of course, are all the provisions in the rules for what happens after the note, after the judgment is entered. You know, you're quite right. From a matter of policy, the rule does not appear to make much sense if read literally. But the question is, doesn't the rule say that you have to file it? And regardless of whether there's a judgment, it doesn't mention anything about whether the judgment has been filed or not. It just says that in the case of a post-trial motion, that when it's denied, the time runs from that. That's what it says. And you're saying, well, the advisory committee's notes seem to be inconsistent with the rule. And, of course, they're a guide to interpreting the rule. And, of course, the law of the law has always been the rule in bankers' trust that a final judgment starts the time running for an appeal. Now, but the rule does make sense, Your Honor, is when it says that if there is a final motion that was either pending or comes after the final judgment, that there need not be a separate order. And we think that's what the rule was intended to do. It eliminated the separate order requirement for a post-trial motion, but for all the obvious reasons that you can think of in construing the rule. For example, when an execution is ordered in a final judgment, that's when the losing party in a money judgment case such as this has the opportunity, the obligation to post a bond if they want to stave off execution. That's when the 10-day period where there's an automatic stay comes into play upon the entry of a final judgment. The concept of a final judgment as a termination of all judicial labor, and perhaps that may be the key concept, and I apologize for not mentioning it earlier. This Court doesn't have jurisdiction over a case arising from the district courts until there has been a termination of all judicial labor. I believe that's basically the test. Reading the rule in the way that Southern Union suggests it should be read would allow this, would require this Court to take jurisdiction of a case when judicial labor is not completed, because everybody concedes that in this case there was no judgment at all. This isn't a matter of a clerk's judgment. This is a matter of a clerk's judgment. This doesn't talk about when we take jurisdiction. This talks about when you must file your notice of appeal. But that's what gives you jurisdiction, Your Honor. Wait a minute. I understand. I understand one of the things necessary for giving us jurisdiction. But, of course, if you filed an early notice of appeal, you wouldn't be giving us jurisdiction. We would catch jurisdiction later it would become jurisdiction. Correct. And it would stay in limbo. It would stay in limbo. So the same is true here. This just tells you when you have to file your notice of appeal. We might not. Sorry, Your Honor. We may not have jurisdiction yet, but when you have to file your notice of appeal and when we get jurisdiction or when you can file your notice of appeal are different  Your Honor, if I might pick up on the words that you used, when you can file a notice of appeal is different from when you must file a notice of appeal. Of course. The courts allow anxious parties to file early notices of appeal that remain in limbo until all judicial labor has entered. But that would require reading into a very practical rule that only eliminated a separate order requirement for post-trial motions, the intent to require a limbo notice of appeal. And as I said, one would suspect that such a radical change in federal appellate procedure would have been accompanied by some indication in the advisory committee notes that bankers' trust is now overruled by a rule of procedure and that the appellate courts are required to have this new form of notice of appeal that's a mandatory limbo notice of appeal. Suppose I think, you know, they just didn't think about it because who can think of all the permutations of human ingenuity? And here we're faced with one and they didn't think about it. But they did write a pretty plain rule. Then may I take a leaf from the United States Supreme Court's statutory construction jurisprudence and let us not inquire into the motives of the quasi-legislators, if you will, and simply interpret the rule so it makes sense and so that it is consistent with, I don't want to be dramatic and say hundreds of years, but many years of United States Supreme Court jurisprudence and the jurisprudence of the federal appellate courts that when all judicial labor has ended, that is when an appellate court may acquire jurisdiction by virtue of a notice of appeal. Let's take the advisory notes out of our brief. Let's take speculation as to what was intended out of the courtroom and let us interpret the rule in conformity with what has been federal appellate practice for a good many years and with the United States and the great and utter significance that has always been given to a final judgment that divests the district court of further jurisdiction in the case and brings judicial labor to an end. And in a money judgment case, that is the judgment that says thou shalt pay X. I have one question I want to ask. You cite the case in your reply brief, and so I assume you're familiar with it. And that was local union number 1992 against the Okanite Company, which could be analogous to this case. How do you distinguish it? Your Honor, I'm sorry. Which case are you citing to from? Well, it's in your reply brief. Yes, sir. I didn't quite hear the name. Local union number 1992 against Okanite. I'm sorry, Your Honor. That doesn't ring a bell from the jurisdictional issue. I don't know what you cited it for, but I see it's in your brief, and it is. Yes, sir. I'm trying to find it in the jurisdictional section in the name. Page 4 and 5 of the reply brief. Yes, sir. That's the Allah case? No. It was local. Your Honor, I have my reply brief in front of me. It's footnote 1. Footnote 1, I cite the Banker's Trust case, Your Honor. That's on page 2. Wait a minute. Maybe. I'm sorry. I'm in our. The reply brief of. Yes, sir. That's the cross-reply. All right. You had this brief. Yes, sir. You must be familiar with the case. Just give me a moment, Your Honor. I'm sorry. I misled you. It was your brief. It's a reply brief. It was gray. Yes, sir. It is before us. Yes, sir. Of course it is. And I simply apologize for not realizing which brief you're quoting from. This is the Third Circuit's case. Right. That says, A judgment granting a plaintiff's summary judgment may have to contain any damages or injunctive relief when a court denies a post-trial motion for judgment as a matter of law simply state in motion to this that I suffice. That is exactly what the rule was intended to do. That is exactly. I agree with that case. It's exactly what the rule was intended to do. It took away the separate document requirement for post-trial motions. It did not turn a prejudgment post-trial order into a final judgment. That is exactly what we believe the rule was intended to do. But that case does not hold that a prejudgment order denying post-trial motions starts the 30 days for notice of appeal. It doesn't hold that at all. We entirely agree with the logic of that case. We say that's what the rule was intended to do. Thank you, Your Honor. We've run over time already. Yes, sir, Your Honor. May I defer to my partner on the merits? You can defer, but he's got no time left. Thank you, Your Honor. Okay. But all of these issues are really quite thoroughly briefed. The punitive damages, the – I think Kelly completed the first issue on the instruction and a thorough argument. The punitive damages is certainly a serious issue that is very thoroughly briefed and I'm sure we are going to consider. Counsel. May it please the Court. I'm Tom Ferguson. I represent the Appalease Southern Union Company. There is one statement that Mr. Sherker made that I absolutely agree with. Let us take the lead of the United States Supreme Court. And what the United States Supreme Court has said specifically with respect to Rule 4 and the exceptions that appear in Federal Rule of Appellate Procedure 4 is that we are to read the plain language of the rule and that where the exception applies, it applies as an exception to the general rule stated elsewhere. And that is exactly where we find ourselves on the jurisdictional issue. There is no question what the plain rule says. The rule says in 4A1A, 4A1A, that typically we will appeal 30 days following the entry of the final judgment or the order. It says final judgment or order. Except is provided for and then it cites the subsection 4 of that rule. And what subsection 4 of that rule says is that in cases where a timely post-trial motion is filed, then the party's appeal time, all of the party's appeal time, runs from the disposition of the last such motion. That's exactly what happened here. The jury verdict was entered. Timely post-trial motions were filed because under 59B you can file them before the final judgment. The Court decided the post-trial motions under Rule 79 entered those judgments on July 28th of 2003. Thirty-two days later, the notice of appeal was filed. Well, let's see, Counsel. I mean, what you say, you're reading the plain language of the rule. That seems correct. That's what it says. But here's a little difficulty I have. Section 1291, 28 U.S. Code 1291, says that our jurisdiction is only over final decisions. Right? That's correct. Okay. And I assume that the Supreme Court was not, when it adopted these rules for us, was not intending to amend the statute. So if your reading is correct, then what it means is that under Rule 4, a person must file a notice of appeal with us at a time when there's no final decision in the district court. So they must, their time for filing a notice of appeal with us begins to run and indeed may run out before there is even a final decision of the district court to be appealed from. That is slightly jarring. And maybe you can cushion the jar. Let me attempt to cushion the jar on how that works. Because I believe, and we can see that in the circumstances of what happened here, there is in fact a final determination and a final decision from which an appeal can occur in these circumstances. The jury returned a verdict. The court had under consideration post-trial motions where it was asked to modify the amount returned by the jury. In fact, set aside the verdict completely based on State law issues. The court declined to do that and did so in an explicit decision that said, motion denied. It said, whatever the jury did is exactly what we're going to enter as a final judgment which serves other purposes. Now, that's not what it said. Before it ever said that, the court said, let's see some forms of judgment. And I'll tell you one thing, said the court. I think it was about January 6th, sometime like that, said the court. I think that the way we ought to do this judgment is to take the 40% from count one and the 20% from count two and average them and come out with a 30% result. That's what I think we should do, said the court at that time. And I want you guys to give me some forms of judgment and such. And presumably a form of judgment was filed a few days after that. And then nothing happens. The court doesn't enter that, doesn't do anything with it, until we get our final judgment ultimately. And lo and behold, there's a 40% in the final judgment it finally enters. So as far as I can see from the record, at least the cold record, the docketing, it looks like all this time we've got all this stuff up in the air and we don't even know what the percentage is going to be. I don't think any of those orders you cited is to decide what the percentage is going to be. One of them seems to reflect what it's going to be. But no place does the court seem to decide it. What do we do with that? Let me first address the record and describe what happened for the trial court. And then I want to point out a specific provision of Rule 4 that deals precisely with this question of amended judgments. Here's what happened in the record. What amended judgment? There's only one judgment. That's correct. But there's an amended judgment provision in Rule 4 that says even after you decide a post-trial motion, if it amends the judgment, it doesn't matter. The time still runs from the order that you enter denying the post-trial motions and not from the later ended amended judgment. But we don't have an amended judgment. That's correct. We don't. So I think you're interjecting another further complication, I understand. But there never was a judgment, period, until this thing that they tried to appeal from came up. There was never a judgment. And under the plain language of the rule, you don't run the time from the judgment. You run it from the order. Yeah. Well, now we're just back talking. We're talking the same talk. We are. But let me go back to the record. Let's go back to my question. Okay? That's where I had started was to address what the court did below. That's a great place to start. In December, the court enters or the jury returns its verdict. The post-trial motions are filed, I think, on January 3rd of the following year. In the middle of January, there is a hearing held on proposed motions or proposed final judgments that were submitted by Mr. Urban and by Southern Union Company. And a bunch of people wanted to intervene. That's right. And people wanted to intervene, not because there was a dispute between Mr. Urban and Southern Union Company about the content of the judgment, but because we wanted to put in the judgment, both of us, the percentages that were allocated to other folks at fault. The court said, we're not going to do that. We want a plain judgment. Neither Mr. Urban nor Southern Union Company ever offered a judgment to the court that adopted this averaging. Instead, we both recognized that there was a 20 percent liability finding on one cause for the same damages, a 40 percent liability finding on the second cause of action for the same damages. And therefore, the appropriate judgment was 40 percent. Still in January. But the judge thought it should be 30 percent, right, at one point? That's what she asked about. Well, she didn't ask about it. She just plain put in her order, we're going to average it. That's what we're going to do. That was on January 5th. Well, that was not the court's order. The minute order wasn't. That's just discussing the judgment. It wasn't. It was on January the 6th. It was a minute order form, I guess. Right? And that minute order on January 6th is reflective of the hearing that we had. And within a week of that, we submit a joint judgment, acceptable Mr. Urban, acceptable to Southern Union Company, that says 40 percent. How do I know that? Pardon me? How do we know that? How do I know that was submitted? I mean, how do we know that that's what it said? How do we know the terms of it? I believe we cite, and I'm looking at the record. Is it in the excerpts? It should be in our record. It should be in the excerpts, but I don't think it is. I apologize to the court if that doesn't appear in the record. There has been no dispute that that was the final order that was ultimately entered by the court, the very one that was entered in January. It is. I mean, I know that they ultimately, that the court ultimately entered, and everybody agrees that's precisely what was submitted to the court back in January? Yes. Ultimately? Yes. The one that was ultimately entered is exactly the same as the one that was submitted by agreement in January of 2003. Okay. Both orders. Now, in a circumstance under Rule 4 where you have a post-trial motion filed and the court grants relief, altering the final judgment that is entered, there's a provision in Rule 4, which is 4A4B2, which says this. If a party intends to challenge an order disposing of any motion listed in 4A4A or a judgment altered or amended upon such motion, so that applies not only to our circumstance but to a circumstance where the order is granted and it amends the motion, and that rule goes on and it says, you must file the notice of appeal or an amended notice of appeal if you've been premature. And here's the operative language. Within the time prescribed by this rule measured from the entry of the order disposing of the last such remaining motion. So what the rule plainly says is even if they were granted relief and even if there relief should take, you still count the appeal time from the very same disposition. And that's the disposition of the post-trial motion. And that's because of the plain language of the rule. And the Supreme Court says follow that plain language. If, if the rule is going to read as Mr. Irvin suggested it should, the rule would have to say this. The rule would say that you run the appeal time from the disposition of the motion or the entry of the judgment, whichever comes later. The rule doesn't say that. But if you take a look at the second half of the rule, 4A deals with civil appeals. 4B deals with criminal appeals. And if you look at 4B3, here's what it says. It says that if a defendant timely makes any of the following motions under the Federal Rules of Criminal Procedure, the notice of appeal from a judgment of conviction must be filed within ten days after entry of the order disposing of the last such remaining motion. That's what the civil rule says. But it goes on. Or within ten days after entry of the judgment of conviction, whichever period ends later. That is the language that Mr. Irvin is asking this Court to graft on to the first half of the rule 4A. The language is not there. The language has never been there. And this language is equally plain that in the criminal side, you do wait until the later of the two occurrences. You don't do it based upon the first occurrence. Rule 58. Let me address that quickly. Rule 58 is the source of the advisory committee language that is cited in the briefs. Recall, however, that Rule 58 is the Federal Rule of Civil Procedure. It's not a rule of appellate procedure. The rule of appellate procedure reaches over for some purposes into the civil rules. But when the civil procedure rule was amended, it was amended for the civil rules, and a final judgment serves multiple purposes in addition to simply, in some circumstances, setting the time that we begin our appeal. I think Mr. Sherker gave some of those examples. Whenever you want to go and collect a final judgment, you need a final judgment. And so even if appeal time is running otherwise, we still have to have that separate entry in the docket so that we can take it to another jurisdiction and enforce it, is the best example that I can give the Court. You know, both sides have really explored this issue, which is fundamental, although we have any jurisdiction, but there are other issues. And I think I am not anticipating my colleagues in saying that we are looking at those cumulative damages, and we're looking at the Supreme Court saying it's a rare case that would go beyond 9-1. How can we possibly take this ratio in this case? The answer to that is based in the TXO case, is based in Gore and Campbell's reaffirmation of what TXO says. It's not the actual damages that you determine whether or not the ratio is acceptable or unacceptable. It's the harm coming from the defendant's conduct. It's the potential harm coming from the defendant's conduct. And in this case, there is admissible evidence below of the following. First, and this is not the expert report, which you may have seen in the brief, but this is testimony that was admitted, unobjected to. First, Southern Union would have made $70 million a year on the transaction, according to John Cavalier, their Donaldson, Lufkin, and Jeanrette investment banker. One Oak, who was the competing suitor for the company, their chairman of the board, who was a former investment banker, Doug Lake, testified that One Oak had determined it would make over $100 million a year. The shareholders of Southwest Gas, before Jim Irvin's intervention, stood to make $108 million more simply on the difference between the Southern Union tender price and the One Oak tender price. But the Court found that you were not entitled to those damages or the lost profits for a whole variety of reasons, unrelated in many of them to Mr. Irvin's activities. Yes, the Court did find that. That doesn't dispose of all of the evidence below that had to do with the enormity of the impact of Jim Irvin's conduct. Not all of the impact occurred directly to Southern Union Company. Southwest Gas shareholders lost at a minimum $108 million. Well, if Mr. Irvin's conduct was responsible for the deal not occurring, but that's what I thought the Court essentially found was not proven. There are two deals. There was a deal in place already with One Oak, and there's no evidence that absent a competing bid and absent Jim Irvin's intervention, that deal would never have closed. It was negotiated. The parties had signed the contract. The terms were in black and white, and it was simply awaiting closing. After the fact, my client came and offered $108 million more. So at a baseline, the Southwest Gas shareholders, because there's never been a denial of regulatory approval in the history of the country for this kind of transaction, at a minimum, they were going to sell their stock and make about $250 to $280 million on the difference between the trading price and the One Oak offer. If your client hadn't come along, they would have gotten that. If my client hadn't come along, they would have received that. And when we did come along, we had an opportunity to give them even an additional $108 million. This was a $2 billion transaction that Jim Irvin virtually single-handedly, because of his position, his violation of his public duties, blew out of the water. Is there evidence that he did this for anything but public reasons? What I mean to say, is there any evidence of personal gain he derived from it in terms of money or something else? And if so, where? Here's the evidence of personal gain. Recall that this is a circumstantial conspiracy case. I will tell the court, and we told the jury below, we do not have a document where everyone sat down and signed it as conspiratorial members. Here's what we do have, though. Jack Rose, who was the second defendant at trial, and who took the Fifth Amendment at trial, had negotiated a substantial deal with Prudential Securities that he would have made, I believe it's two-thirds of $3 million on the first $3 million of the transaction, and 80% above that. The reason that Prudential testified that Jack Rose was employed by them and by One Oak was because he had contacts with Jim Irvin. Now, what I'm trying to ask is, is there any indication that Irvin got or was to get something? I understand about Rose. That's right. And here's the connection with Jim Irvin. And I know Rose has some connection to Irvin. Connect some evil gain, please. Let's go directly to the most apparent thing that there was testimony about that Jim Irvin received. Mark Diagardi, who was Jim Irvin's campaign advisor and who was Rose's attorney and who was One Oak's attorney, testified that Jim Irvin's interest was political. He wanted to run for a higher public office. And to do that, he says to the jury, you have to have money to do it. That's the immediate evidence the jury saw. The other thing that the jury saw. I still understand. He has to run for higher office. He'd need money. I understand that. That seems to be the way things work. Tell me where he's getting evil gain out of this. You still haven't told me. That provides the motivation. The gain has got to be inferred circumstantially from this evidence. Every time that Jack Rose called Prudential to negotiate his contract, every time that Jack Rose called One Oak or Prudential to feather the conspiracy that we proved to the trial court and to the jury, he also called on that very same day Jim Irvin and had substantial conversations. We've submitted this evidence in the record and we submitted it to the jury. There is a tremendous pattern throughout this course of wrongdoing where every time there's an event of wrongdoing, there's contact in the phone records with Jim Irvin. That coupled with Jim Irvin's absolute denial that he did anything wrong, his opening statement to the jury was, we don't deny there was wrongdoing. Our defense is I wasn't involved in it. After a two-month trial showed that was false, the very last question asked of Jim Irvin on the stand is, do you think you would have done anything different? He says, no, I wouldn't have. The jury here was confronted with a defendant that they found and could have legitimately find was untruthful, concealed evidence, covered up the entire conspiracy. And once they find that, once they find he's willing to shred documents in response to the subpoena, that jury is entitled to determine on these circumstances that there's circumstantial evidence that Jim Irvin would not have done this but for some substantial reason, whether it was simply selling out his office for a friend or whether it was because he intended to participate in the profits from the Prudential deal. That was within the ability of this jury to determine in a circumstantial conspiracy case. I see my time is up. Kennedy. Has this been, have these facts been referred to the U.S. Attorney or the State authorities? Yes, they have been. They have been? They have been. Okay. How long ago? Contemporaneous with the bringing of the Southern Union lawsuit, the evidence would show. Thank you, Your Honors. We'll give you two or three minutes for rebuttal. Unless the Court has additional questions on the jurisdictional issue, I'd like to address the punitive issue, which we have not yet had the opportunity to speak to. With regard to the issue of potential damages, there are two responses. The first is that the lower court determined that the damages that counsel now suggests to this Court are the basis for potential damages were unduly speculative and refused to permit them to be entered into the trial. Consequently, the issue of those damages was never litigated by either party, and my client never had the opportunity to introduce conflicting evidence. Second, this Court only last month in Baines v. Arco held that the TXO decision with regard to potential damages was not applicable in a case such as this, because as the United States Supreme Court pointed out, the potential damages issue only arises when the so-called scheme is unsuccessful. And as this Court pointed out, and as the United States Supreme Court has pointed out, when you have substantial compensatory damages, there is no basis for considering potential damages. In the Baines case, this Court held that $50,000 was substantial damages. In this case, we have substantially more than $50,000 in damages. Under those circumstances, the Supreme Court of the United States has held on several occasions now that the criteria that it set forth in BMW and, again, in State Farm is applicable. And that criteria, according to the Court, when there's substantial damages, means that it may well be that a one-to-one ratio is the most the due process will permit and rarely, as Your Honor pointed out, is more than a single-digit ratio permissible. In this Court, we have a 135-to-one ratio. The lower court based that ratio primarily upon its finding that because Mr. Irvin was a public official, that somehow all of the criteria set forth by the Supreme Court was not applicable. In the first place, while indeed being a public official is a significant issue, it is in this case the only issue that results in elements that would satisfy tortious interference. If all of the same conduct that Mr. Irvin was accused of engaging in had been done by a private individual, there would likely be no tortious interference. But the mere fact that one is a public official doesn't mean that the heinousness rises to the level that it justifies 135-to-one. $60 million is unprecedented in the annals of American jurisprudence against an individual. If we are going to say that based upon the evidence of Mr. Irvin's conduct in this case, that $60 million is permissible, where do we go from there in a case involving a public official that engages in far more heinous conduct, a public official who actually receives a bribe, a public official who receives a bribe to close his eyes to industrial activity that he knows is going to result in severe health injuries to large segments of the public or death? There is no place to go from $60 million. Essentially what happened in this case is that the court below decided that as long as you're a public official, the cap is off. And the last thing that I'd like to note for the court is that the very foundation for all of what the United States Supreme Court has said here, by its own words, is the due process requirement for fair notice. There must be fair notice not only of the elements of the wrongdoing itself, but of the magnitude of the potential penalty. In this case, if there is to be a $60 million punitive damages judgment against an individual, there is no fair notice. There is no precedent in American law by which Mr. Irvin or anyone else in his position could conceivably have anticipated that he would be subject to that magnitude of punishment for the conduct that he was alleged to have committed, not in the civil law of the state of Arizona, not in the criminal law of the state of Arizona, which has a maximum $300,000 penalty, not in the law of any state of the United States or in the federal system. Thank you, counsel. Case just argued will be submitted. The court will stand in recess for the day. All rise. This court stands in recess until 9 a.m. tomorrow morning. Thank you.
judges: Reinhardt, Noonan, Fernandez